UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WILLIE SANDERS

CIVIL ACTION

VERSUS

No. 14-139-JJB-SCR

SAFETY SHOE DISTRIBUTORS, L.L.P

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion (Doc. 21) for Summary Judgment brought by Defendant, Safety Shoe Distributors ("Safety Shoe"). Plaintiff, Willie Sanders ("Sanders"), has filed an opposition (Doc. 23) and defendant has filed a reply brief (Doc. 26). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Defendant's Motion (Doc. 21) for Summary Judgment is **GRANTED**.

**I.      Background**

The summary judgment evidence establishes that from September of 2010 until September of 2012, Safety Shoe employed Sanders as a salesperson in its footwear store in the ExxonMobil plant located in Baton Rouge, Louisiana. *Albarado Aff.*, Doc. 21-5, 1. Safety Shoe operates the store within the ExxonMobil plant in order to provide ExxonMobil employees with an easy way to purchase shoes without leaving the plant. *Id.* A voucher system was used whereby the price of the purchased shoes would be deducted from the ExxonMobil employee's paycheck. *Sanders Depo.*, Doc. 21-12, 89. Sanders was the only Safety Shoe employee working at the ExxonMobil plant on a daily basis. *Albarado Aff.*, Doc. 21-5, 1. He was responsible for selling shoes to the ExxonMobil employees (his customers), inputting the sales information into Safety Shoe's computer system, and generating the end of day report. *Luparello Aff.*, Doc. 21-4, 1–2. Safety Shoe's Owner, District Manager, and Baton Rouge Office Manager were all a part

of the decision to hire Sanders and did so will full knowledge that he was African America. *Id.* at 3.

According to Safety Shoe, Sanders' employment was terminated on September 14, 2012, due to poor work performance. *Id.* at 5. Specifically, Safety Shoe received customer complaints about Sanders' poor customer service, and Sanders repeatedly made clerical mistakes despite being counselled to slow down and check his work.[1] *Id.* at 3–5, ex. 3–6 (Employee Written Reprimands dated 6/15/11, 3/15/12, 4/27/12, 6/13/12). For example, the record demonstrates that on multiple occasions Sanders incorrectly entered a customer's purchase information—grossly over-charging the customer for more shoes than he actually purchased. *Albarado Aff.*, Doc. 21-5, 2–7, ex. 1–6. For these reasons, in April of 2012, Safety Shoe decided to fire Sanders as soon as they found a replacement but continued to employ Sanders in the interim. *Id.* at 6. Early the next month, Safety Shoe placed an advertisement in a newspaper seeking Sanders' replacement. *Id.* at 6, ex. 7–8.

According to Sanders, Safety Shoe fired him because of his race (African American) and because he filed an Equal Employment Opportunity Commission ("EEOC") complaint concerning racially motivated comments[2] made by two customers. *Complaint*, Doc. 1. Specifically, the record indicates that on August 13, 2012, a white customer asked Sanders to shine his shoes. *Answer to Interrog.*, Doc. 21-11, no. 6. Additionally, on May 14, 2012, a different white customer referred to Sanders as "boy." *Id.* Sanders initially contacted the EEOC on August 15, 2012, alleging that Safety Shoe was made aware of these racially motivated comments but did nothing in response. *EEOC Letter*, Doc. 21-7; *EEOC Charge*, Doc. 21-8. According to Sanders, he informed Safety Shoe's Baton Rouge Office Manager of the

---

[1] Sanders contends that Safety Shoe's allegations of poor work performance are false, but Sanders provides no evidence of their falsity apart from his subjective beliefs.
[2] The Court assumes, but does not decide, that the customers' comments were racially motivated.

customer's comments and she then told the District Manager.[3] *Sanders Depo.*, Doc. 23-13, 41–44. The EEOC sent a notice of the Charge of Discrimination to Safety Shoe on August 27, 2012. *EEOC Charge*, Doc. 21-8.

On May 29, 2014, Sanders filed this case alleging a hostile work environment,[4] retaliation, and employment discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. 1). This Court dismissed Sanders' Title VII claims, finding that they were untimely. (Doc. 20). Safety Shoe now brings the present motion arguing that it is entitled to summary judgment on Sanders' § 1981 claims of harassment, retaliation, and discrimination.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."[5] Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party,

---

[3] Safety Shoe's Office Manager and District Manager deny that Sanders informed them of the customers' harassing comments. *Albarado Aff.*, Doc. 21-5, 7; *Luparello Aff.*, Doc. 21-4, 9.
[4] The parties refer to plaintiff's hostile work environment claim as a claim of "harassment."
[5] The Court advises the attorneys that, going forward, they should thoroughly review their briefs and cases cited therein before submitting them. Specifically, counsel for the defendant incorrectly cited to *Little v. Republic Refining Co.*, 924 F.2d 93 (5th Cir. 1991) by using a quotation and policy statement that do not appear in the case. *See Defendant's Memo. in Support*, Doc. 21-2, 18.

the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

### III. Discussion

Sanders makes the following claims under 42 U.S.C. § 1981:[6] (1) hostile work environment; (2) retaliation; and (3) discrimination on the basis of race. Safety Shoe asserts several arguments against Sanders' claims. First, Safety Shoe asserts that Sanders' hostile work environment claim fails because the customers' comments were not sufficiently severe to affect a condition of Sanders' employment and therefore do not fall under the purview of § 1981. Second, Safety Shoe assets that Sanders retaliation claim fails because the decision to fire Sanders occurred months before he contacted the EEOC and therefore could not have been made in retaliation for such complaint. Third, Safety Shoe asserts that Sanders' employment discrimination claim fails because Sanders was fired for legitimate, non-discriminatory reasons, including poor customer service and repeated clerical errors.

#### a. Harassment

To establish a prima facie case of hostile work environment (i.e. harassment) under § 1981, a plaintiff must show that (1) he belongs to a protected group, (2) he was subject to

---

[6] In employment discrimination cases the same conduct may be actionable under either § 1981 or Title VII, in which event the same analysis applies in evaluating the merits of the employment discrimination claims. *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277 (5th Cir. 1994).

unwelcome harassment, (3) the harassment complained of was based on the protected group, (4) the harassment complained of affected a term, condition, or privilege of his employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 257 (5th Cir. 2011). To affect a "term, condition, or privilege" of employment, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 380 (5th Cir. 2012) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("[A] mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." (citations omitted)). Simple teasing, offhand comments, and isolated incidents, are not considered sufficiently severe. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burrle v. Plaquemines Parish Gov't*, 553 F. App'x 392 (5th Cir. 2014) (holding that two isolated incidents—plaintiff's supervisor calling plaintiff "boy" and another person using the "n" word in plaintiff's presence—was not severe or pervasive).

In this case, Sanders fails to establish a prima facie case of a hostile work environment because there is no genuine dispute concerning whether the harassing comments Sanders complained of affected a term, condition, or privilege of Sanders' employment. The only harassment alleged by Sanders are two isolated incidents of comments made by his customers— one referring to Sanders as "boy" and the other asking Sanders to shine his shoes. Such offhand comments[7] are not sufficiently severe to alter a condition of employment and, indeed, there is no evidence presented that the conditions of Sanders' employment were actually affected. Additionally, the harassing comments were not made by co-workers or supervisors. Instead,

---

[7] Sanders admits that the customer who asked Sanders to shine his shoes did so "in a joking manner . . . not [] in a mean manner[.]" *Summary of Interview*, Doc. 23-14; *see Sanders Depo.*, Doc. 21-12, 62–63.

5

they were made by customers who had no authority over Sanders, could not directly impact the terms or conditions of his employment, and never complained about Sanders to Safety Shoe. *Albarado Aff.*, Doc. 21-5, 5–6. Therefore, the Court finds that there is no genuine dispute concerning Sanders' claim for hostile work environment (i.e. harassment) under § 1981.

### b. Retaliation

A prima facie case for retaliation requires the plaintiff to show that (1) he participated in a protected activity, (2) he suffered an adverse employment action by his employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff cannot support all three elements, then summary judgment for the defendant is appropriate. *Id.* Causation, for purposes of proving a prima facie case of retaliation, may be established by close temporal proximity between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007). However, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." *Thompson v. Somervell Cnty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011) (holding no causation in a Title VII retaliation case when plaintiff relied solely on the inference of temporal proximity and defendant offered testimony that he did not know of the protected activity prior to making the decision to terminate). Specifically, the decision maker must know of the protected activity when the *decision* to take the adverse employment action occurred. *Reynolds v. Extendicare Health Servs., Inc.*, 257 F. App'x 914, 919 (6th Cir. 2007) (citing *Clark City Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines

previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Here, Sanders fails to establish a prima facie case for retaliation because there is no genuine dispute that Safety Shoe made the decision to terminate Sanders prior to Sanders contacting the EEOC. According to Safety Shoe's Owner, District Manager, and Baton Rouge Office Manager, the decision to terminate Sanders was made in April of 2012. This assertion is supported by the sworn affidavits of the three Safety Shoe decision makers and a copy of advertisements for Sanders replacement, dated early May of 2012. Sanders has provided no evidence to contradict this assertion[8] and instead relies solely on the fact that he was fired eighteen days after the EEOC sent notice of Sanders complaint to Safety Shoe. Additionally, Sanders' claim that Safety Shoe knew of the customers' harassing comments prior to terminating him is without merit. First, since the comments were made in May and August of 2012, the decision to terminate Sanders occurred prior to any notice that Safety Shoe could have had concerning these comments. Second, Sanders specifically alleged that he was terminated "in retaliation for filing of an EEOC charge of discrimination based on race and/or color," not for complaining about customers' comments. *Complaint*, Doc. 1. Since temporal proximity is insufficient without first demonstrating that Safety Shoe knew of Sanders' EEOC complaint prior to making the decision to terminate him, there is no causal connection between the two events. Therefore, the Court finds that there is no genuine dispute concerning Sanders' retaliation claim under § 1981.

c. **Discrimination**

---

[8] Sanders' apparent disbelief that the hiring process took Safety Shoe five months is insufficient to create a genuine dispute without some evidence that it did not actually take Safety Shoe five months. *Plaintiff's Opposition Memo.*, Doc. 23, 8.

7

A prima facie case of employment discrimination is established by a showing that the plaintiff "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similar situation employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360–61 (5th Cir. 2004). The *McDonnell Douglas* burden-shifting framework applies to employment discrimination cases that rely on circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the action taken. *Id.* at 802. At this stage, there is no credibility assessment—an employer meets its burden by providing admissible evidence of a legally sufficient explanation for its actions. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957–58 (5th Cir. 1993); *see Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.").

If the employer meets its burden, then the burden shifts back to the plaintiff to show that the employer's reasons are merely pretext. *McDonnell Douglas*, 411 U.S. at 804; *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). To meet this burden, the plaintiff must rebut the nondiscriminatory reasons "by showing that the employer's proffered explanation is false or 'unworthy or credence.'" *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 357–58 (5th Cir. 2006) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). However, pretext cannot be established by conclusory statements and subjective speculation—the plaintiff "must offer specific evidence refuting the factual allegations underlying [the employer's] reasons[.]" *Turner*, 476 F.3d at 345–46 (granting summary

8

judgment because plaintiff "primarily relies upon her own declaration, which largely consists of conclusory assertions rebutting [employer's] reasons, to establish pretext."). Additionally, the "same actor inference" works against a finding of pretext. *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22 (5th Cir. 2009). This inference "creates a strong presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Id.*

In this case, Sanders fails to meet his burden because there is no genuine issue concerning whether Safety Shoe's proffered non-discriminatory reasons for termination are pre-textual. For purposes of summary judgment only, Safety Shoe assumes Sanders could establish a prima facie case of employment discrimination. *Defendant's Memo. in Support*, Doc. 21-2, 14. According to Safety Shoe, race had nothing to do with the decision to terminate Sanders.[9] Instead, Safety Shoe provided documentation of several occurrences of Sanders' poor work performance. *See Albarado Aff.*, Doc. 21-5 (attached exhibits); *Luparello Aff.*, Doc. 21-4 (attached exhibits); *Sanders Depo.*, Doc. 21-12. The evidence of repeated clerical errors and customer service complaints supports a good-faith belief that Sanders was a subpar employee and thus satisfies Safety Shoe's burden of providing a non-discriminatory reason for terminating Sanders. In response, Sanders asserts that there is a genuine issue concerning whether Safety Shoe's proffered reasons are true—claiming that Safety Shoe's reasons are contradicted by the record. *Plaintiff's Opposition Memo.*, Doc. 23, 5. To support this claim, Sanders relies solely on his testimony that he never received the written reprimands relied on by Safety Shoe, was not given an opportunity to respond to alleged customer service complaints, and did not receive counseling on his poor performance. *Id.* at 5–7 (citing Sanders' deposition testimony, the summary of his

---

[9] During the course of the Baton Rouge Office Manager's employment with Safety Shoe, seven employees (including Sanders) have held Sanders' position—four where Caucasian and three were African American. *Albarado Aff.*, Doc. 21-5, 5.

9

interview with ExxonMobil HR, and the answers he provided to the EEOC questionnaire). Sanders does, however, admit to making mistakes during his employment, discussing those mistakes with his supervisors, and being told to slow down and review his work in order to avoid mistakes. *Sanders Depo.*, Doc. 21-12. The factual discrepancies concerning the extent and specific instances of Sanders' mistakes are not enough to establish a genuine dispute over whether defendant's reason for terminating Sanders (poor work performance) is false and therefore pretextual.

Moreover, the same actor inference creates a strong presumption against animus because Safety Shoe's Owner, District Manager, and Baton Rouge Office Manager were all a part of the decision to hire Sanders, fully aware that he is African American, as well as the decision to fire him. Sanders provides no evidence, other than his own testimony, that Safety Shoe had no good-faith reason to believe he was a subpar employee.[10] Such subjective speculation and conclusory statements are insufficient to meet Sanders burden. Therefore, the Court finds that there is no genuine dispute concerning Sanders' employment discrimination claim under § 1981.

## IV. Conclusion

For the reasons stated herein, the Defendant's Motion (Doc. 21) for Summary Judgment is GRANTED. All claims against Defendant, Safety Shoe Distributors, L.L.P, are DISMISSED.

Signed in Baton Rouge, Louisiana, on August 24, 2015.

                                       **JUDGE JAMES J. BRADY**
                                       **UNITED STATES DISTRICT COURT**
                                       **MIDDLE DISTRICT OF LOUISIANA**

---

[10] In support for his claims, Sanders relied on his own deposition testimony, a summary of an interview he had with ExxonMobil HR (Doc. 23-14), and the answers he provided on the EEOC questionnaire (Doc. 23-6; Doc. 23-12). Sanders did cite the summary of an interview with the ExxonMobil Supervisor of the Safety Shoe program (Doc. 23-16), but the statements relied on are merely the supervisor's recital of what Sanders told him—he had no independent knowledge of the events.